IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KELLANI LETTSOME,<br><br>                      Plaintiff,<br><br>-against-<br><br>TRANS UNION, LLC, and SYNCHRONY BANK,<br><br>                      Defendants. | Civil Case Number: |

**INTRODUCTION**

1. Identity theft has long been a widespread problem in this country. Over the past decades, identity theft has emerged as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime and are required to spend countless hours and untold effort in attempting to undo the resulting harm caused to their credit reports.[2]

2. Plaintiff, Kellani Lettsome, has been the unfortunate victim of identity theft. Specifically, upon information and belief, at least one individual used Plaintiff's information to open an account with Synchrony Bank, without Plaintiff's authorization. This account has harmed Plaintiff's credit with the credit reporting agency Trans Union reporting fraudulent inquiries on Plaintiff's credit file.

3. Rather than working with Plaintiff to rectify this unfortunate situation, Defendant

---

[1] *See, Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).
[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http:// www.ftc.gov/os/2003/09/synovatereport.pdf).

Trans Union has refused to remove these fraudulent inquiries from his credit report, despite Plaintiff specifically disputing the fraudulent items. Instead, the Defendants have continued to willfully and negligently harm Plaintiff's credit report by continuing to associate these fraudulent inquiries with Plaintiff, thereby severely impacting Plaintiff's life and his ability to obtain credit.

4. An "inquiry" is a record that identifies the person or business that obtained a consumer's credit report from a credit reporting agency ("CRA"), that person or business's address, and the date on which the person or business acquired the consumer's credit report.

5. Because inquiries identify the persons and businesses *from whom* the subject of a credit report has sought credit and *how often* that consumer seeks credit, they are a part of the consumer's credit history and included in that consumer's credit report.

6. Inquiries generally have a negative impact on a consumer's credit score (*i.e.*, the more inquiries, the lower the score) because scoring programs consider consumers who make multiple applications for credit riskier than consumers who do not.

7. Like other items on consumer reports, inquiry information is often inaccurate, and inquiries may appear on a consumer's credit report notwithstanding the fact that the consumer did not actually seek credit. This can occur when, for example, a CRA provides a consumer's report to a creditor who requested a report on a different person who may have a similar name or in cases of fraud or unauthorized access.

8. Including inaccurate inquiries or inquiries that do not belong to the consumer who is the subject of the credit report misrepresent the consumer's true credit history, unfairly lowering the consumer's credit score.

9. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Trans Union, LLC and Synchrony Bank have negligently, recklessly and knowingly disseminated false information regarding Plaintiff's credit, namely by

continuing to associate Plaintiff with these fraudulent inquiries, particularly after Plaintiff mailed letters to Defendant Trans Union specifically advising them of this issue.

10. Plaintiff further alleges that Defendants failed to investigate credit report inaccuracies in response to Plaintiff's disputes.

11. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, attorneys' fees, and costs.

## JURISDICTION

12. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendants regularly conduct business within the state of Georgia and violated Plaintiff's rights under the FCRA in the state of Georgia as alleged more fully below.

13. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, Defendants conduct business in this District, and communications giving rise to this action occurred in this District.

## PARTIES

14. Plaintiff, Kellani Lettsome ("Plaintiff"), is a resident of Fulton County, Georgia and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(f).

15. Defendant Trans Union, LLC ("Trans Union") is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

16. Trans Union is a company with its principal place of business located at 555 West Adams Street, Chicago, IL 60661.

17. Defendant Synchrony Bank ("Synchrony") is a national bank with its headquarters located at 777 Long Ridge Road, Stamford, Connecticut 06905.

## FACTUAL ALLEGATIONS

18. In or around October of 2025, Plaintiff discovered that a SYNCB/ONEPAY WALMART ("SYNCHRONY") account, account number 609767XXXXXX, opened on October 27, 2025, was appearing on his consumer credit reports from Experian, Equifax and Trans Union. Upon information and belief, this account was fraudulently opened by an identity thief without Plaintiff's knowledge or authorization to do so.

19. In addition to the SYNCHRONY account appearing on Plaintiff's credit reports, Plaintiff noticed a hard inquiry from SYNCB dated October 27, 2025, which is the same date the SYNCHRONY account was fraudulently opened.

20. Plaintiff accordingly disputed this fraudulent account and inquiry in writing with all three of the credit reporting agencies. In his disputes, Plaintiff clearly advised the CRA's that he was the victim of identity theft, and that this information should be removed.

21. In addition to Plaintiff's disputes, Plaintiff contacted Synchrony directly regarding the fraudulently opened SYNCHRONY account, and a fraud investigation was initiated.

22. On or about November 25, 2025, Plaintiff followed up with Synchrony by phone and was advised by Synchrony that the fraud investigation was concluded and resolved in Plaintiff's favor on November 13, 2025, confirming he was not responsible for this account. Synchrony further advised Plaintiff that the account had been closed, and it would be removed from his credit reports.

23. On or around January of 2026, Plaintiff accessed his credit reports from all three credit reporting agencies. CRA's Experian and Equifax removed the fraudulent SYNCHRONY account and corresponding inquiry; however, Trans Union continues reporting the fraudulent

inquiry connected with this account.

24. Following receipt of Plaintiff's dispute, Trans Union refused to investigate, correct or remove the fraudulent information from Plaintiff's credit file, and continues reporting the information to this day.

25. Upon information and belief, Trans Union had all the information it needed to locate, investigate, and correct this inaccurate information, but just failed to do so.

26. Upon information and belief, Defendant Synchrony received notice of all of Plaintiff's disputes from the CRAs.

27. Trans Union and Synchrony were each notified of the Plaintiff's disputes but refused to investigate and/or remove inaccurate reporting.

28. At all times pertinent hereto, Defendants' violations of the FCRA were willful, and carried out in reckless disregard for consumer's rights as set forth under sections 1681s, 1681i, 1681g and 1681b of the FCRA. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

29. Additionally, Defendants' violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

30. In any event, Defendants are liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

31. As a direct and proximate result of the Defendants' willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed in his daily life, by the impact that this derogatory information has had on his credit score and his ability to secure credit.

32. Defendants' violations of the FCRA further caused Plaintiff great distress, anger, annoyance and frustration in his daily life, subjected Plaintiff to abusive credit reporting practices

from which Plaintiff had a substantive right to be free and caused the dissemination of defamatory information regarding Plaintiff.

## COUNT I
### FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
### 15 U.S.C. § 1681e(b)
### AGAINST TRANS UNION

33. Paragraphs 1-32 are realleged and incorporated by reference as if fully set forth herein.

34. Section 1681e(b) of the FCRA requires that, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

35. Were Trans Union to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed the inaccurate and fraudulent SYNCHRONY inquiry from the Plaintiff's credit report, especially after the Plaintiff (1) disputed the SYNCHRONY account and inquiry with Trans Union, and (2) received confirmation from Synchrony that the fraud investigation was concluded in his favor and that the account and inquiry would be removed from his credit reports.

36. As a direct and proximate result of Trans Union's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed, as explained above.

## COUNT II
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### AGAINST TRANS UNION

37. Paragraphs 1-32 are realleged and incorporated by reference as if fully set forth herein.

38. At all times pertinent hereto, Trans Union was a "consumer reporting agency"

("CRA") as that term is defined in 15 U.S.C. § 1681a(f).

39. The FCRA provides that:

> "*if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer* and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, *the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file* in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."
> 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

40. In or around October of 2025, Plaintiff initiated a dispute with Trans Union requesting that it correct and remove the specific fraudulent items in his credit file that were patently inaccurate and damaging to him, including the fraudulent SYNCHRONY information.

41. Trans Union received Plaintiff's dispute letters, as evidenced by the certified mailing receipt in Plaintiff's possession.

42. However, Trans Union never adequately investigated Plaintiff's disputes, as required by the FCRA.

43. Instead, Trans Union, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report the inaccurate SYNCHRONY information, something that any basic investigation would have prevented.

44. As a direct and proximate result of Trans Union's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed, as explained above.

## COUNT III

### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 U.S.C. § 1681s-2(b)
### AGAINST SYNCHRONY

45. Paragraphs 1-32 are realleged and incorporated by reference as if fully set forth herein.

46. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

47. In or around October of 2025, Plaintiff initiated disputes with the credit bureaus disputing the accuracy of the account being reported by SYNCHRONY.

48. Upon information and belief, SYNCHRONY received notice of these disputes from the credit bureaus.

49. Synchrony was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

50. Even after Plaintiff properly disputed this account with the credit reporting agencies and was directly advised by Synchrony that Plaintiff's fraud investigation had been concluded in this favor and that the SYNCHRONY account would be removed from his credit reports, SYNCHRONY refused to conduct a reasonable investigation and continued inaccurately reporting the fraudulent inquiry on Plaintiff's Trans Union credit report.

51. Synchrony's conduct violated section 1681s-2(b) of the FCRA.

52. As a result of Synchrony's conduct, Plaintiff was harmed, as discussed above.

### DEMAND FOR TRIAL BY JURY

53. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

A. Awarding Plaintiff actual damages, statutory damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

B. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

D. Equitable relief, enjoining Defendants from engaging in the unjust and unlawful conduct alleged herein; and

E. Awarding Plaintiff such other and further relief as this Court may deem just and proper.


Dated: March 4, 2026     By:     */s/ Misty Oaks Paxton*
Misty Oaks Paxton, Esq.
THE OAKS FIRM
3895 Brookgreen Pt.
Decatur, GA 30034
Tel: (404) 500-7861
Email:attyoaks@yahoo.com
*Attorney for Plaintiff*